UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARY P. CARTER                                    CIVIL ACTION NO. 08-1343

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

TOWN OF BENTON, ET AL.                            MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 17) filed by Defendants Town of Benton, Mayor Albert Doughty, Chief of Police Charles Pilkinton, and Officer Jason Clinton. Plaintiff Mary P. Carter ("Carter") opposed the motion. See Record Document 19. For the reasons which follow, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

The Town of Benton, at the recommendation of Chief of Police Charles Pilkinton ("Chief Pilkinton"), hired Carter as a police officer on January 13, 2007. See Record Document 1 at ¶ 4; Record Document 17-2 at 1.[1] Prior to her employment with the Benton Police Department, Carter was a police officer in Oil City, Louisiana, where she initially worked patrol. See Record Document 17-2 at 1. She attended the Police Academy while she was a police officer in Oil City, but was unable to complete the academy. See id. As a result, she became a reserve officer and was not permitted to return as a full time police officer until she graduated from the academy. See id.

After being hired by the Benton Police Department, Carter worked patrol and was assigned to a unit with Officer Jason Clinton ("Officer Clinton") for approximately two

---

[1] Defendants contend that Carter was hired as a "Probationary Police Officer," but Carter disputes this fact. See Record Documents 17-2 & 19-1.

weeks. See Record Document 17-2 at 2. According to Carter, Officer Clinton sexually harassed her during this time period. See Record Document 1 at ¶ 5. She also alleged that the sexual harassment continued after this initial ride along period and continued until the end of April 2007. See id. at ¶¶ 5, 7. After the alleged sexual harassment ended, Carter alleged that Officer Clinton and other male officers maintained a sexually hostile work environment. See id. at ¶ 8.

After learning of the alleged sexual harassment from third party sources, Chief Pilkinton questioned both Carter and Officer Clinton about the allegations of sexual harassment. See Record Document 17-2; Record Document 17, Exhibit B at 18. Chief Pilkinton's investigation occurred around September 4, 2007. See Record Document 19-3 at ¶¶ 18-19; Record Document 17-5 at 58. Carter informed Chief Pilkinton of Officer Clinton's sexual harassment. See Record Document 17-4 at 18. Officer Clinton denied the sexual harassment. See id. Carter alleges that she asked Chief Pilkinton to do something about Officer Clinton's behavior, but that Chief Pilkinton took no action. See Record Document 1 at ¶¶ 17-18.

In late April 2007, Carter underwent surgery to remove an ovary. See Record Document 1 at ¶ 7; Record Document 19-3 at ¶ 9. As a result, she was absent from work for approximately two weeks. See Record Document 19-3 at ¶ 9. Carter later underwent a partial hysterectomy and was absent from work from about June 15, 2007 to mid-to-late July 2007. See id.; Record Document 1 at ¶¶ 9-10. Carter was under the care of a physician during these absences and after she returned to work. See Record Document 17, Exhibit B at 29-31. Once she returned to work, her activities were restricted and she was placed on light duty. See id. at 31. She was instructed to do no running, no sit-ups,

no combative issues, and no squats. See id. at 31, 53. Carter was not able to return to full duty until September 7, 2007. See id. at 64, 68-69.

Louisiana Revised Statute 40:2405(A) provides in pertinent part:

(1) Notwithstanding any other provision of law to the contrary, any person who begins employment as a peace officer in Louisiana subsequent to January 1, 1986, must successfully complete a certified training program approved by the council and successfully pass a council-approved comprehensive examination within one calendar year from the date of initial employment. Any person who fails to comply with this requirement shall be prohibited from exercising the authority of a peace officer; however, such persons shall not be prohibited from performing administrative duties.

(2) In addition, any person employed or commissioned as a peace officer, reserve peace officer, or part-time peace officer prior to July 1, 1998, including those persons employed as such prior to January 1, 1986, who has not satisfactorily completed a basic firearms training program, shall do so no later than August 1, 1999. All other such persons who begin employment subsequent to July 1, 1998 shall satisfactorily complete a basic firearms training program prescribed by the council within one calendar year from the date of initial employment. Any person who does not comply with the provisions of this Paragraph shall be prohibited from exercising the authority of a peace officer, reserve peace officer, or part-time peace officer; however, such persons shall not be prohibited from performing administrative duties.

La. R.S. 40:2405(A). In accordance with Section 2405, the Benton Police Department requires each new police officer to become Police Officer Standard Training ("POST") certified within one year. See Record Document 1 at ¶ 14; Record Document 19-2. Due to the aforementioned surgeries, the resulting absences from work, and recovery time, Carter was not able to attend POST certification training at the academy on two separate occasions. See Record Document 17, Exhibit B at 22-29. The date of the first "missed" academy is unclear from the summary judgment record. The date of the second "missed" academy was early September 2007. See id. at 28. Specifically, this academy started on

September 4, 2007. See id. Carter contends that she was issued a voucher by Captain Kenny Sanders to attend POST certification training at the Caddo Parish Sheriff's Office Regional Training Academy beginning on January 7, 2008. See Record Document 1 at ¶ 16; Record Document 19-4. The graduation date for this academy was set for April 4, 2008. See Record Document 19-4. Conversely, Defendants maintain that Carter was not scheduled to attend the January 2008 academy and that the voucher issued by Captain Kenny Sanders "was to the Benton Police Department, Town on Benton. It was not to an individual person." Record Document 17, Exhibit B at 62.

The Benton Police Department also required "a pre-academy firearms qualification during the interim time of . . . being hired and obtaining . . . POST certification." Record Document 19-2; Record Document 17, Exhibit B at 32.[2] This rule is based on Act 108, which was discussed by Bruce Marvin Teutsch ("Teutsch"), a firearms instructor with the Bossier Sheriff's Department and the North Louisiana Criminal Justice Academy, in his deposition:

> Act 108 is basically a pre-academy firearms course that has been mandated by the Louisiana Peace Officers' Standards and Training counsel, what a person needs to do to become certified with their firearm before they go to a POST basic academy class.

Record Document 20, Exhibit E at 9. Carter was unable to qualify with a firearm after three attempts. See id. at 26. She tried to qualify with her firearm on August 22, 2007, September 4, 2007, and September 5, 2007. See id. at 10-12, 15-18.

Due to Carter's failure to qualify with a firearm, which resulted in her being unable

---

[2]Defendants contend that this rule is in accordance with Peace Officer Standards & Training, Section 4721. See Record Document 19-2. However, a copy of Section 4721 is not part of the summary judgment record.

to patrol, she was put on administrative duties towards the end of her employment with Benton Police Department. See Record Document 17, Exhibit B at 53-54. The Benton Police Department did not have a designated administrative or clerical position. See id. at 51.

Carter signed a letter of resignation[3] on or about September 11, 2007. See Record Document 17-2 at 2; Record Document 17, Exhibit B at 54. Chief Pilkinton drafted and typed the letter of resignation. See id. The letter of resignation stated that Carter was resigning for health reasons. See Record Document 17-2 at 2.

## LAW AND ANALYSIS

**I.     Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp.,

---

[3]To the Court's knowledge, a copy of the letter of resignation is not contained in the summary judgment record.

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. All factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## II. Sexual Harassment and Hostile Work Environment Claims.

Carter originally asserted claims for sexual harassment, hostile work environment, retaliation, and gender discrimination. See Record Document 1. In her opposition, Carter conceded that she is unable to present sufficient evidence to prove her claims of sexual harassment or hostile work environment. See Record Document 19 at 1. She has now dismissed those claims. See id. Summary judgment in favor of Defendants is, therefore, **GRANTED** as to Carter's sexual harassment and hostile work environment claims. Carter maintains her retaliation and gender discrimination claims.

Carter alleged that Officer Clinton sexually harassed her and contributed to the hostile work environment. Her claims of retaliation and gender discrimination are not directed at Officer Clinton. Accordingly, all claims against Officer Clinton have now been dismissed.

## III. Intersection of 42 U.S.C. § 1983 and Title VII.

It is unclear whether Carter is pursuing her remaining claims of retaliation and

gender discrimination under Section 1983, Title VII, or both. Regardless, the Court's analysis remains unchanged, as the Fifth Circuit has held that the same burden shifting test is applied to discrimination claims under Section 1983 and Title VII. See Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir.1996)("[W]e have on numerous occasions recognized that section 1983 and Title VII are parallel causes of action"); Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1047 (5th Cir.1996) (applying the same *prima facie* test to discrimination claims under Title VII and section 1983); Merwine v. Bd. of Trustees for State Inst. of Higher Learning, 754 F.2d 631, 635, n. 3 (5th Cir.1985) ("When a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established for each claim are deemed the same under both statutes").

### IV.  Constructive Discharge.

As set forth *infra*, Carter has alleged constructive discharge as the adverse employment action forming the second element of her *prima facie* case of retaliation. She has also alleged constructive discharge as part of her gender discrimination claim, that is, she was constructively discharged because of sex role stereotypes. Therefore, both Carter's retaliation and gender discrimination claims encompass her constructive discharge allegation.

Generally, a successful claim of constructive discharge allows an employee who resigned to recover all damages available for formal discharge. See Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 480 (5th Cir. 2008). To determine whether an employer's actions constitute a constructive discharge, courts must consider if "working conditions

[became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Id. The Fifth Circuit has identified six factors to aid in the constructive discharge inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

Id. at 481. "Although constructive discharge claims generally involve employees' allegations that they effectively were forced to resign because of intolerable working conditions, an employee also may demonstrate constructive discharge if he or she resigns after the employer communicates that the employee will be fired." Barbara R. Lindemann & Paul Grossman, Employment Discrimination Law 1445 (C. Geoffrey Weirich 4th ed. 2007); see also EEOC v. Univ. of Chicago Hosp., 276 F.3d 326 (7th Cir. 2002); Spulak v. K Mart Corp., 894 F.2d 1150 (10th Cir. 1990).

Here, the Defendants contend that "on or about September 10, 2007, [Carter] resigned from the Benton Police Department for health reasons." Record Document 17-2 at 2. Defendants admit that Chief Pilkinton drafted the resignation. See id. Carter "contends that she was terminated or forced to resign or be fired because she was a woman and in retaliation for having made a report of sexual harassment." Record Document 19-1 at ¶ 12. While Chief Pilkinton testified in his deposition that he did not give Carter an ultimatum of resign or be fired, he did acknowledge that "there was no doubt in [his] mind that [the Town Council] would terminate her" because she was not certified with a firearm. Record Document 17-5 at 55. Further, in the Town's EEOC response, the Mayor and Chief Pilkinton stated that "Carter was given the option of resigning or be

terminated." Record Document 19-2. Carter has all the while maintained that she was forced to resign in lieu of being fired. See Record Document 19-3 at ¶ 19. Due to this conflicting record evidence, Carter has created a genuine issue of material fact regarding whether Carter would be fired if she did not resign. Thus, for the limited purpose of the instant Memorandum Ruling, the Court will assume that Carter was constructively discharged.[4]

**V.    Retaliation.**

Carter alleges that she was "constructively discharged . . . on or about September 10, 2007 *in retaliation* for her reporting and opposing sexual harassment on September 4, 2007." Record Document 1 at ¶ 24 (emphasis added). She further contends that "Clinton and other employees created and maintained a hostile work environment *in retaliation* for her rejecting Clinton's advances." Id. (emphasis added). Based on these allegations, Carter appears to allege that she was retaliated against, i.e., constructively discharged and subjected to a hostile work environment, because she rejected, reported, and opposed sexual harassment.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. See Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff is successful in making a *prima facie* showing, then the

---

[4]If Carter's claims of retaliation and gender discrimination survive summary judgment, the question of constructive discharge, i.e., whether an adverse employment action occurred, will be decided by the jury.

burden shifts to the employer to articulate a legitimate non-retaliatory reason for its employment action. See id. If the employer meets this burden of production, then the plaintiff bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason. See id.

Carter's retaliation claim relating to the creation of a hostile work environment due to her rejecting, reporting, and/or opposing sexual harassment fails as a matter of law. Carter has dismissed her hostile work environment claim, conceding that she is unable to present sufficient evidence to prove such a claim. Thus, she cannot establish the second element of her *prima facie* case of retaliation, that is, her employer took an adverse employment action against her by subjecting her to a hostile work environment.

The Court now moves to Carter's claim that she was constructively discharged in retaliation for her reporting and opposing sexual harassment. Defendants do not appear to dispute that Carter engaged in protected activity when she told Chief Pilkinton of Officer Clinton's alleged sexual harassment. The Court has also assumed that Carter was constructively discharged, thus establishing that she suffered an adverse employment action. Therefore, the issue is whether Carter has established a causal connection between her protected activity and her constructive discharge. See Aryain, 534 F.3d at 484.

Carter points to "timing alone to show causation." Record Document 19 at 8-10. She specifically relies on the close timing between Chief Pilkinton's investigation into the alleged sexual harassment, which occurred on or about September 4, 2007, and her forced resignation, which occurred on or about September 10, 2007. See Record Document 19-3 at ¶¶ 18-19. Chief Pilkinton does not necessarily dispute the timing of these events, but

stated that he did not "know if it was that narrow of a time frame." Record Document 17, Exhibit B at 58. The Supreme Court has held that "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case [of retaliation] uniformly hold that the temporal proximity must be 'very close.'" Clark County School Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001). Here, Defendants have only Chief Pilkinton's recollection of a *possible* broader time frame to dispute Carter's contention in her EEOC affidavit that only seven days passed between her report of sexual harassment and her forced resignation. At a minimum, the Court finds that there are genuine issues of material fact relating to the causal link between Carter's protected activity and her constructive discharge.

Because Carter has, at a minimum, raised genuine issues of material fact regarding her *prima facie* case of retaliation, the burden shifts to Defendants to articulate a legitimate non-retaliatory reason for Carter's forced resignation. Here, Defendants have presented a legitimate non-retaliatory reason for Carter's forced resignation, that is, her failure to obtain a pre-academy firearms qualification during the interim time of her being hired and obtaining her POST certification, all in accordance with Act 108. Thus, the burden shifts back to Carter to demonstrate that Defendants' reason is a pretext for the actual retaliatory reason.

Carter must prove that her forced resignation would not have occurred *but for* her reporting sexual harassment to Chief Pilkinton. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007). At this stage, Carter must rely on more than temporal proximity to survive summary judgment. See Roberson v. Alltel Information

Services, 373 F.3d 647, 656 (5th Cir.2004) ("Without more than timing allegations, and based on Alltel's legitimate, nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper."); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471-472 (5th Cir. 2002) ("Other than the five month time period, Raggs has presented no evidence of retaliation. Thus, we conclude that MP&L's decision not to rehire Raggs in 1999 was not a function of retaliation.").

Here, Carter argues pretext based upon the disconnect between Defendants' legitimate non-retaliatory reason, i.e., failure to qualify with a firearm, and the proffered reason in the letter of resignation, i.e., health reasons. There is no dispute that Chief Pilkinton drafted the letter of resignation, which cited health reasons as the basis for Carter's resignation. See Record Document 17, Exhibit B at 54. Yet, he admitted in his deposition that Carter's failure to qualify with a firearm, not her health reasons, was the real basis of the resignation. See id. at 54-56, 58-59. Chief Pilkinton explained that he made no mention of Carter's failure to qualify with a firearm in the letter of resignation because he did not want to limit her future chances of being hired by another law enforcement agency. See id. at 59. In fact, he stated in his deposition that "maybe it wouldn't be as big a deal" if he had just put "unable to qualify with a handgun" in the resignation letter. See id.

The Court is now faced with a credibility issue of determining the real reason for Carter's forced resignation – health reasons, her failure to qualify with a firearm, or her report of sexual harassment. The Court cannot make this determination without weighing the credibility of Chief Pilkinton and/or deciding whether to believe the reason stated in the letter of resignation, the reason stated in his deposition, or the retaliatory reason set forth

by Carter. Accordingly, summary judgment on Carter's retaliation claim must be **DENIED**, as there are genuine issues of material fact surrounding pretext.

### VI. Gender Discrimination.[5]

Carter has also alleged a gender discrimination claim:

> Defendants Town, Chief and Mayor constructively discharged [her] on or about September 10, 2007 because [she] did not meet their stereotypical gender based views of what a police officer should be able to do, as a result of the restrictions placed upon [her] after her operations for female based health conditions.

Record Document 1 at ¶¶ 25-26; Record Document 19 at 11-13.[6] While not artfully plead, it appears that Carter is seeking to recover under a theory of gender stereotyping.[7] The Supreme Court first suggested the existence of a claim for sexual stereotyping under Title VII in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989). In Price Waterhouse, the Supreme Court found that, in enacting Title VII, "Congress intended to

---

[5]Carter has asserted her claims of gender discrimination under both federal and state law. Claims asserted under the Louisiana Employment Discrimination Act, La. R.S. 23:301, *et seq.*, are analyzed under the same framework and jurisprudential precedent as Title VII claims. See King v. Phelps Dunbar, L.L.P., 1998-1805 (La. 6/4/99), 743 So.2d 181, 187; La Day v. Catalyst Technology, Inc., 302 F.3d 474, 477 (5th Cir. 2002).

[6]Carter does not allege a violation of the Americans with Disabilities Act or any other federal law concerning any alleged disparate treatment in relation to her surgical operations for female based health conditions.

[7]Carter seemingly attempts to clarify her gender discrimination claim in her opposition brief. Yet, any attempt to rewrite or amend her complaint through her opposition brief is a procedure not permitted by the Federal Rules. Even considering Carter's opposition, the Court is faced with a summary judgment record that does not specifically detail Carter's claim or claims of gender discrimination. Parties should never leave the Court in the position of having to guess the basis of their claims, as such a situation forces the Court to make assumptions. Here, the undersigned can only assume, based on the allegations plead in the complaint, that Carter is seeking to recover under a theory of gender stereotyping.

strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." Id. at 251, 109 S.Ct. at 1791. Yet, some courts have cautioned "that the actual holding of Price Waterhouse is considerably more narrow than its sweeping language suggests" and that "[a]dverse action taken on the basis of an employer's gender stereotype that does not impose unequal burdens on men and women or disadvantage one or the other does not state a claim under Title VII." Schroer v. Billington, 424 F.Supp.2d 203, 209 (D.D.C. 2006). The Fifth Circuit has not yet recognized or even addressed the gender stereotyping theory of Title VII discrimination, under either a same-sex or opposite-sex fact scenario. See Love v. Motiva Enterprises, LLC, No. 07-5970, 2008 WL 4286662, *9 (E.D.La. Sept. 17, 2008). Because the Fifth Circuit has yet to recognize a theory of gender stereotyping under Title VII, this Court finds that Carter is unable to establish that the alleged discriminatory discharge, or constructive discharge, in this case occurred "because of . . . sex," as required by Title VII. See Lynch v. Baylor Univ. Med. Ctr., No. 05-0931, 2006 WL 2456493, *4 (N.D.Tex. Aug. 23, 2006), citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 1002 (1998) ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'"). Additionally, even if this Court were to recognize the theory of gender stereotyping under Title VII, Carter has presented only a conclusory allegation and no evidence of how she was perceived by Defendants as not conforming to stereotypical images and expectations or how Defendants espoused stereotypical views. Summary judgment is, therefore, **GRANTED** as to Carter's gender

discrimination claim.[8]

## CONCLUSION

Based on the foregoing analysis, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Carter's sexual harassment and hostile work environment claims; all claims against Officer Clinton; and Carter's gender discrimination claims. The motion is **DENIED** as to Carter's retaliation claim.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 7th day of June, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[8] Even if Carter had pursued a more traditional gender discrimination claim, she would not be able to demonstrate a *prima facie* case of gender discrimination. To satisfy the requirement of a *prima facie* case, Carter must establish that she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated persons who were not members of the protected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973); Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir.2001).

Carter has established elements one and three, as she is a woman and the Court has assumed constructive discharge. However, Carter would encounter evidentiary hurdles in establishing elements two and four. The undisputed summary judgment evidence demonstrates that Carter was not in compliance with Act 108. Without successfully qualifying with her firearm and because there was no designated administrative or clerical position, Carter was not qualified for the position in question. Moreover, Carter has presented no evidence that other similarly situated male officers would not have been asked to resign had they not qualified with their firearm prior to their enrollment in the academy. Thus, even a more traditional gender discrimination claim would fail as Carter cannot establish elements one and four of her *prima facie* case.